# IN THE COURT OF APPEALS OF IOWA

No. 22-1073
Filed January 10, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DAYTON EARL MICHAEL ELLIOTT,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Muscatine County, Tom Reidel, Judge.

        A defendant appeals his criminal convictions, challenging the sufficiency of the evidence. **AFFIRMED.**

        Jesse A. Macro Jr. of Macro Law, LLP, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney General, for appellee.

        Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

Dayton Elliott and Alejandro Flores were tried together for their involvement in the stabbing of Samantha Frye in the parking lot of a bar. Casting his role in the stabbing as a mere bystander, Elliott appeals the sufficiency of the evidence supporting his convictions for assault and assault causing serious injury. We affirm.

**I.      Background Facts and Proceedings**

As we recently detailed in Flores's appeal from his convictions, the evidence from the joint trial disclosed these facts:

> On January 23, 2021, Samantha Frye and her boyfriend decided to celebrate their birthdays together with a dinner at a local restaurant. When they were done eating, they called Samantha's niece, Faith, who was out on a date herself. The couples met up at a nearby martini bar, before deciding to head to a new bar in town.
> Soon after they arrived, Faith's ex-boyfriend, Dayton Elliott, walked into the bar with a group of people that included Flores. No one in Samantha's group knew Flores. But they did know Elliott because his relationship with Faith had ended badly. Faith felt threatened when Elliott walked in, as did Samantha. So they made plans to leave while trying to avoid Elliott—who was staring at them from across the bar and making hand gestures toward them.
> As Samantha, Faith, and their dates tried to walk out of the bar, Elliott and Flores approached them. The video from cameras inside the bar, which does not have audio, seems to show the two groups exchanging words. An owner of the bar moved Elliott away from Samantha's group as they left the bar. Flores tried to go after them, but Ashley, one of Samantha's friends, held him back for a few seconds, ripping his sweatshirt in the process. Flores pushed her aside and quickly followed Samantha's group outside. Elliott left the bar from a different exit and went around to the parking lot.
> Video from cameras outside the bar shows Samantha's group walking to her vehicle. Flores can be seen rushing out after them. Ashley was close behind, trying to separate him from the group. While she was next to Flores, Ashley testified that she heard a switchblade click open and saw the blade in his hand. She yelled out, "Knife," but no one heard her. Faith's date, however, saw the knife when he turned to look back at Flores. Ashley ran into the bar

to get help, while another bystander tried to keep Flores away from Samantha's group.

Meanwhile, Samantha's group made it to her car. They all got in except for Samantha, who was standing outside the driver's side door yelling for Ashley to come with them. As she was doing so, Flores and Elliott advanced toward her vehicle. Elliott split off from Flores and went around to the front of the car while Flores approached the passenger side. The video of what happened next is dark and difficult to see. One of the bar owners, who was standing outside, testified that it looked like Flores "put his upper body into the vehicle." But Samantha's boyfriend, who was in the front passenger seat, said that Flores never came into the vehicle. He was sure that all the windows and doors, except for Samantha's, were closed.

According to Samantha, who was still outside the vehicle, Elliott was "banging on the vehicle and shouting profanities . . . demanding that Faith talk to him." Samantha testified that she looked across the car at Elliott and heard him say, "Fucking stab her already." Samantha got into the car and told her boyfriend what Elliott had said. Once she was inside, Samantha's boyfriend saw Flores "on the front passenger side of the car in the front." Samantha then tried to back out of the parking spot. She thought that her window was down while she was doing so. As the car was backing up, some bystanders outside the bar thought it ran over Flores's leg. From her spot in the back, Faith remembers seeing Flores "getting up off the ground, propping himself up on the car."

Another camera angle outside the bar shows that as the car pulled out of the parking spot, Flores ran toward the driver's side in a crouched position. The car then speeds away. Inside the car, Samantha "felt a gush" of what she thought was warm water pouring down her back. She put her hand behind her left shoulder blade and saw it was blood. Samantha told her boyfriend that she'd been stabbed. While he put pressure on the wound, Samantha drove them straight to the hospital.

*State v. Flores*, No. 22-0426, 2023 WL 6293840, at *1–2 (Iowa Ct. App. Sept. 27, 2023), *further review denied* (Nov. 20, 2023). After a second stabbing at the bar shortly after the first, and the arrival of police, both Elliott and Flores fled the scene. *Id.* at *2. Elliott was found hiding in a dumpster by the bar. *Id.* When Flores was apprehended nearby, a bloody knife was found on his person. *Id.*

In counts nine and twelve of the amended joint trial information, Elliott was charged with attempted murder and willful injury for his part in the stabbing of

Samantha. A jury convicted Elliott of the lesser-included offenses of assault and assault causing serious injury. The court merged those convictions and entered judgment and sentence for assault causing serious injury only. Elliott appeals, challenging the sufficiency of the evidence on both convictions.[1]

## II.     Standard of Review

We review challenges to the sufficiency of the evidence for correction of errors at law, giving high deference to the verdict. *State v. Burns*, 988 N.W.2d 352, 370 (Iowa 2023). In doing so, we view "the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017) (citation omitted).

## III.     Analysis

Elliott first claims the State offered insufficient evidence to prove that he aided and abetted in the stabbing of Samantha.[2] Dialing in, he argues "[t]here is

---

[1] Because the district court merged the convictions and only entered judgment and sentence for assault causing serious injury, and because we conclude there is sufficient evidence to support that conviction, we need not separately address the challenge to the assault conviction. *See State v. Gathercole*, No. 14-0816, 2015 WL 5278964, at *2 n.1 (Iowa Ct. App. Sept. 10, 2015).

[2] The jury was instructed as follows on aiding and abetting:

> All persons involved in the commission of a crime, whether they directly commit the crime or knowingly "aid and abet" its commission, shall be treated in the same way.
>
> "Aid and abet" means to knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed. Conduct following the crime may be considered only as it may tend to prove the defendant's earlier participation. Mere nearness to, or presence at, the scene of the crime, without more evidence, is not "aiding and abetting." Likewise, mere knowledge of the crime is not enough to prove "aiding and abetting."

insufficient evidence to show [he] knowingly encouraged the stabbing or assault by Mr. Flores" because the State "based its aiding and abetting theory on one alleged phrase heard by" Samantha: Elliott telling Flores to "fucking stab her already." Elliott contends Samantha's testimony about that statement was "so unbelievable that no rational factfinder could give any weight or credibility to the statement."

We dispose of this claim on the principle that it's not the court's role, when deciding a challenge to the sufficiency of the evidence, "to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022). On direct examination, as the State points out in its appellate brief, Samantha unequivocally testified: "I heard Dayton Elliott. I saw Dayton Elliott. I looked at Dayton Elliott, and he said, 'Fucking stab her already.'" She stuck to this testimony—even when separately pressed on cross-examination by each of the defendants' attorneys—repeating multiple times that Elliott directed Flores to "fucking stab her already," a directive that Flores followed. A police officer who went to the hospital immediately after the stabbing

---

The guilt of the person who knowingly aids and abets the commission of a crime must be determined only on the facts which show the part he has in it, and does not depend upon the degree of another person's guilty.

The crime charged requires a specific intent. Therefore, before you can find the defendant "aided and abetted" the commission of the crime, the State must prove the defendant either has such specific intent or "aided and abetted" with the knowledge the others who directly committed the crime had such specific intent. If the defendant did not have the specific intent, or knowledge the others had specific intent, he is not guilty.

testified the first thing Samantha told him was that "Elliott told a shorter Hispanic guy to stab her." The officer noted Samantha repeated this as she recounted the events: "She kept telling me that Dayton Elliott told the shorter guy to stab her." While there were some inconsistencies in the evidence, those were for the jury to sort out. *See Flores*, 2023 WL 6293840, at *4 ("There is conflicting evidence in the record, with each witness remembering the chaotic events a bit differently. But it's the jury's job, not ours, to sort out those conflicts.").

Viewing the evidence in the light most favorable to the State while affording the jury its right "to weigh the evidence and place credibility where it belongs," *State Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006) (citation and internal quotation marks omitted), the jury could rationally conclude that Elliott was guilty as an aider and abettor "by knowingly advising or encouraging the act in some way before or when it [was] committed."

For his second challenge, Elliott claims there was insufficient evidence to support his conviction "for assault causing serious injury because [he] did not injure anyone." This is a purely legal challenge based on Elliott's interpretation of the marshalling instruction. The jury was instructed that the State was required to prove the following elements for assault causing serious injury: (1) "Elliott did assault Samantha Frye by aiding and abetting in her being stabbed" and (2) his "acts caused serious injury to Samantha Frye."

Elliott argues the second element did not contain any aiding-and-abetting language, so the State was required to prove that he personally stabbed Samantha. We summarily agree with the State that Elliott's "acts" as stated in element two encompass aiding and abetting Flores as contemplated by element

one. The jury was separately instructed on aiding and abetting, and it was not provided with any limiting instruction stating that "knowingly advising or encouraging" the crime could not be an act that caused the injury as required by the second element for assault causing serious injury. In our view, the instructions allowed the jury to properly conclude Elliott was guilty beyond a reasonable doubt.

## IV. Conclusion

We affirm, concluding there was substantial evidence to support the State's aiding-and-abetting theory of criminal liability and the marshalling instruction for assault causing serious injury authorized the jury to reach a guilty verdict with aiding and abetting serving as the act causing serious injury.

**AFFIRMED.**